*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAMER BAHNAM,

        Plaintiff-Appellant,

and

AMERICAN ANESTHESIA ASSOCIATES, LLC,
SPINE SPECIALISTS OF MICHIGAN, PC, and
ADVANCED SURGERY CENTER, LLC,

        Intervening Plaintiffs,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellee,

and

LISA LYNN GROSS,

        Defendant.

UNPUBLISHED
October 15, 2020

No. 347638
Macomb Circuit Court
LC No. 2017-003983-NI

Before: SWARTZLE, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

In this action to recover personal-injury-protection (PIP) benefits, plaintiff Samer Bahnam appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant Farm Bureau General Insurance Company of Michigan. In light of this Court's opinion in *Haydaw v Farm Bureau Ins Co*, __ Mich App __; __ NW2d __ (2020) (Docket No. 345516), and our Supreme Court's opinion in *Meemic v Fortson*, __ Mich __; __ NW2d __ (2020) (Docket No. 158302), we vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On October 28, 2016, plaintiff was injured in a motor-vehicle collision with defendant Lisa Lynn Gross. Plaintiff sustained serious injuries, including bleeding on the brain, a broken jaw, broken ribs, a fractured hip, ligament damage, lung and kidney damage, and injuries to his back and neck. Plaintiff was in a coma for approximately five days after the collision occurred. After he regained consciousness, plaintiff was unable to recall the events leading up to the collision.

Between November 2016 and September 2017, plaintiff submitted to Farm Bureau monthly statements for household services provided to him by his sister, Dina Bahnam.[1] The statements indicated that Dina had provided replacement services for plaintiff on each day of the month, including services such as vacuuming, dusting, cooking, dishwashing, making beds, doing laundry, taking out the garbage, and driving.

On October 23, 2017, plaintiff filed this lawsuit. Plaintiff's complaint alleged three counts. In count 1, plaintiff alleged that he was injured in a motor-vehicle collision and that he was entitled to PIP benefits from Farm Bureau, his insurance provider. In count 2, plaintiff sought recovery from Gross. Plaintiff alleged that he sustained serious injuries from a collision caused by Gross's negligent operation of her motor vehicle.[2] In count 3, plaintiff sought recovery from Farm Bureau for breach of contract. Plaintiff alleged that that he had a policy of no-fault insurance with Farm Bureau that included coverage for uninsured or underinsured-motorist benefits, that he sustained serious injuries in a motor-vehicle collision involving Gross (an underinsured motorist), and that Farm Bureau breached the terms of his insurance policy by refusing to provide PIP benefits to him.

On December 13, 2017, Farm Bureau filed an answer to plaintiff's complaint. With regard to count 1, Farm Bureau denied that plaintiff was entitled to PIP benefits as a result of the motor vehicle collision with Gross. With regard to count 3, Farm Bureau denied that plaintiff sustained serious injuries in the motor-vehicle collision with Gross, and denied that it breached the terms of plaintiff's insurance policy by refusing to pay PIP benefits. Moreover, Farm Bureau asserted in its affirmative defenses that plaintiff's claim for PIP benefits was barred because plaintiff had misrepresented material facts in an effort to obtain those benefits and to defraud Farm Bureau. In its affirmative defenses, Farm Bureau did not specify the nature of plaintiff's allegedly fraudulent misrepresentations.

Between December 2017 and January 2018, three medical-care providers, American Anesthesia Associates, LLC, Spine Specialists of Michigan, PC, and Advanced Surgery Center, LLC, intervened as plaintiffs in this action. The medical-care providers sought payment of PIP

---

[1] For clarity, because Samer Bahnam and Dina Bahnam share the same last name, we will refer to Samer Bahnam as plaintiff and will refer to his sister by her first name.

[2] On July 9, 2018, the trial court entered a stipulated order of dismissal regarding plaintiff's claim of negligence against Gross. That claim is not at issue in this appeal.

benefits from Farm Bureau regarding their claims for compensation for medical services that they had provided to plaintiff for injuries resulting from the collision.

After filing the complaint, plaintiff continued to submit to Farm Bureau monthly statements for household services provided to him by his sister. These statements included the months of October 2017 through May 2018. Once again, the statements indicated that Dina had provided replacement services on each day of the month, including services such as vacuuming, dusting, cooking, dishwashing, making beds, doing laundry, taking out the garbage, and driving.

In January 2018, Farm Bureau hired an investigator to surveil plaintiff. On several dates in January 2018, the investigator observed plaintiff engaged in physical activities such as shoveling snow, cleaning snow off a vehicle with a broom, shoveling snow off his front porch, walking without a cane, driving a vehicle various distances, shopping, and carrying groceries.

Surveillance video taken on January 9, 2018, showed plaintiff intermittently using a cane when walking. Surveillance video taken on January 15, 2018, showed plaintiff shoveling snow off his porch with one hand and cleaning snow off a vehicle with one hand without using a cane. That surveillance video also showed plaintiff operating a vehicle. Surveillance video taken on January 18, 2018, showed plaintiff walking without a cane and operating a vehicle. Surveillance video taken on January 19, 2018, showed plaintiff walking without a cane, operating a vehicle with another individual in the passenger seat, and grocery shopping with another individual. That surveillance video also showed plaintiff kneeling in a store to retrieve items from the bottom shelf and shoveling small amounts of snow off his driveway. Furthermore, the January 19, 2018 surveillance video shows plaintiff washing his vehicle at a self-operated car wash.

On April 5, 2018, plaintiff attended an independent medical examination performed by Dr. Donald Garver. Surveillance video taken that day showed that plaintiff was driven to Dr. Garver's office by another individual. When plaintiff arrived at Dr. Garver's office, he was wearing a neck brace and using a cane. The surveillance video taken that day also showed plaintiff walking without a cane after he returned to his home.

After evaluating plaintiff and reviewing his medical records, Dr. Garver noted that "[t]here is no question that [plaintiff] had a significant automobile accident." Nonetheless, Dr. Garver opined that plaintiff had reached maximum medical improvement, and that he did not need any further medical treatment. Dr. Garver also opined that plaintiff no longer required work restrictions, attendant-care services, household-replacement services, or transportation services, but qualified his opinion by stating that plaintiff "may have required the above for a short period of time subsequent to the accident while recovering from the stated injuries."

On April 30, 2018, Farm Bureau's investigator again surveilled plaintiff and observed him performing yard work, which included bending at the waist, kneeling, carrying a 5-gallon bucket containing dirt, moving a tarp with dirt on it, and lifting a lawn bag. Three time-stamped surveillance photographs taken that day depicted plaintiff bending at the waist and kneeling in his garden. A surveillance video taken that day showed plaintiff performing yard work. In total, plaintiff performed yard work for more than two hours.

On May 29, 2018, plaintiff was deposed. English is not plaintiff's first language, and he testified through an interpreter. Plaintiff denied that he had experienced any pre-accident medical issues related to his back. Plaintiff qualified his testimony, however, by stating that "the accident affected my memory so there's a lot of things I do not remember." This testimony was inconsistent with plaintiff's medical records, which revealed that he sought medical treatment for back and neck pain before the motor vehicle collision. Plaintiff sought medical treatment for back and neck pain on August 10, 2015, and a physician diagnosed plaintiff with lumbar radiculopathy. On August 31, 2015, plaintiff began attending physical therapy to address his back and neck pain, and his medical records indicate that he attended physical therapy nine times throughout September 2015. When plaintiff testified that he had not experienced any pre-accident medical issues related to his back, he was not asked specifically about the medical treatment he received in 2015.

Plaintiff also testified at his deposition that he had been completely unable to drive a vehicle since the date of the accident. As plaintiff stated, "What's preventing me from driving the car is the severe pain in my back. I cannot tolerate the pain." Plaintiff further claimed that another person drove him to his medical appointments. When he provided this testimony, plaintiff was not asked about the dates in January 2018 when he was observed driving a vehicle.

With respect to replacement services, plaintiff testified that he performed tasks such as shoveling snow, planting the garden, and cutting the lawn before the accident, but that his sister provided those services after the accident. As plaintiff testified:

> *Q*. Since the accident have you been able to start doing any of those things you did before the accident, chores-wise?
>
> *A*. No, impossible.
>
> *Q*. So you haven't made your bed?
>
> *A*. Nothing, even the glass of water, she would bring it to me. I can't.
>
> *Q*. So definitely no cutting the grass or shoveling or garden work?
>
> *A*. No, no, no. I forgot that I have to give you a verbal answer, because I was nodding.
>
> *Q*. Okay, so that was no to gardening, shoveling or yard work, anything of that nature?
>
> *A*. No. Sometimes, because my sister cannot do everything, sometimes we call a guy who cut the grass in the area and shovels snow, so we pay him.

When he provided this testimony, plaintiff was not asked about the dates in January and April 2018 when Farm Bureau's investigator observed him engaged in the physical activities that he claimed he was unable to perform.

On December 11, 2018, Farm Bureau filed a motion for summary disposition under MCR 2.116(C)(10), arguing that plaintiff was precluded from recovering PIP benefits and that summary

disposition was appropriate because plaintiff had made fraudulent representations. Farm Bureau relied on an anti-fraud provision in its contract of insurance with plaintiff. In its motion, Farm Bureau argued that plaintiff committed fraud by testifying falsely at his deposition about his need for replacement services and by submitting monthly requests for replacement services that were not medically necessary. Farm Bureau argued that, under this Court's decision in *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014), "Plaintiff Bahnam's fraudulent claims for household services operate to preclude him from coverage under his automobile policy" of insurance. Farm Bureau did *not* argue that plaintiff committed fraud before he filed this lawsuit or that he committed fraud before he purchased the auto-insurance policy at issue.

The trial court held oral argument on the motion on January 7, 2019. Farm Bureau primarily argued that plaintiff's deposition testimony about his need for replacement services was inconsistent with the surveillance video taken of his activities in January and April 2018. Although Farm Bureau admitted that plaintiff disclosed pre-accident injuries and treatment for back pain on his application for PIP benefits, it nonetheless argued that plaintiff's subsequent deposition testimony about his pre-accident medical condition was inconsistent with his medical records. Farm Bureau argued that plaintiff's deposition testimony regarding his pre-accident injuries provided "a clear indicator of his intent to deceive that he changed his story from the application of benefits to the deposition." In addition, Farm Bureau argued that the medical providers' claims for payment related to medical services they provided to plaintiff should be dismissed because the medical providers "stand in the shoes of plaintiff."

Relying on this Court's opinion in *Bahri*, the trial court granted Farm Bureau's motion for summary disposition, reasoning that plaintiff had lied about his physical capabilities at his May 2018 deposition. As the trial court stated, "The fact of the matter was he was lying and . . . it's absolutely clear under *Bahri* that I've got to make that call that this is a fraudulent claim." The trial court, however, expressed dismay that it was dismissing the claims of the intervening medical providers, and urged this Court to "find some way to be of assistance to the healthcare providers."

Plaintiff subsequently filed a motion for reconsideration. In its order denying plaintiff's motion for reconsideration, the trial court stated:

> On January 7, 2019, this court entered an order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10), dismissing the plaintiff's and intervening plaintiffs' claims with prejudice. This court found that viewing the pleadings and evidence in the light most favorable to the plaintiff and intervening plaintiffs, there is no genuine issue of material fact with respect to the issue of whether the plaintiff committed fraud; and that the defendant, therefore, is entitled to judgment as a matter of law. The court, relying on *Bahri* . . . found that the evidence of fraud was so overwhelming, there remained no *genuine* issue of material fact for the jury to decide.

This appeal followed.

## II. ANALYSIS

After the trial court granted summary disposition to defendant, this Court issued *Haydaw*. In light of that decision, the trial court erroneously (though understandably) granted summary disposition in favor of Farm Bureau. In granting that motion, the trial court relied solely on plaintiff's May 2018 deposition testimony, which was inconsistent with video evidence regarding plaintiff's post-accident physical activities. In *Haydaw*, this Court ruled that "fraud provisions in no-fault insurance policies do not provide grounds for rescission based upon false statements made by the insured during first-party litigation." *Id*. at ___; slip op at 1. Because we are bound to follow *Haydaw*, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. When considering a motion under this rule, the trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*.

The no-fault-insurance policy at issue in this case contained an anti-fraud clause which provided that the entire policy would be void if plaintiff intentionally concealed or misrepresented any material facts or circumstances, engaged in fraudulent conduct, or made false statements relating to claims under the policy. "Reliance on an exclusionary clause in an insurance policy is an affirmative defense." *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017). Therefore, an "insurance company has the burden to prove that one of the policy's exclusions applies." *Id*. (cleaned up). "Thus, to obtain summary disposition the insurer must show that there is no question of material fact as to any of the elements of its affirmative defense." *Id*. The elements of the affirmative defense are as follows:

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Bahri*, 308 Mich App at 424-425 (citation omitted).]

In *Haydaw*, this Court considered whether the trial court properly granted summary disposition in favor of an insurance provider based upon a fraud provision contained in its no-fault-insurance policy. In that case, the trial court found that the insured made false statements during his deposition in the litigation. On appeal, this Court held that "fraud provisions in no-fault insurance policies do not provide grounds for rescission based upon false statements made by the insured during first-party litigation." *Haydaw*, __ Mich App at __; slip op at 1. The *Haydaw* Court reasoned that false statements made during discovery in the midst of litigation do not provide grounds to void an insurance policy "because, by that time, the claim has been denied and the parties are adversaries in litigation." *Id*. at ___; slip op at 5. In this situation, a defendant is

"essentially seeking dismissal of [a] plaintiff's claims on the basis of alleged discovery misconduct." *Id.* at ___; slip op at 6. The Court also reasoned that "statements made during litigation are by their nature incapable of satisfying the elements for voiding a policy on the basis of post-loss fraud." *Id.* at ___; slip op at 6. To establish an affirmative defense under *Bahri*, 308 Mich App at 424-425, a plaintiff must show that a defendant made a material misrepresentation with the intention that the insurer would act upon it. *Id.* "Yet an insured's statements during discovery are made with the intention that the trier of fact, not the insurer, will act on them." *Id.* Finally, the Court reasoned that "a contrary ruling—that a fraud or misrepresentation clause applies to statements made during the course of litigation—would implicate the first-breach rule." *Id.* at ___; slip op at 7. "That is, if the insurer, by the denial of the claim, was first to breach the contract, it may not defend on the grounds that the plaintiff subsequently failed to adhere to the contract." *Id.* "Accordingly, summary disposition on the basis of false statements would not be warranted unless and until it is determined that the denial of the claim did not breach the contract." *Id.*

As this Court recently stated in *Fashho v Liberty Mut Ins Co*, __ Mich App __, __; __ NW2d __ (2020) (Docket No. 349519); slip op at 4:

> We read *Haydaw* as standing for the unremarkable proposition that an insurer cannot assert that it denied a claim because of fraud that occurred after litigation began; the fraud must have occurred before the legal proceedings. This recognizes the reality that a plaintiff-insured only commences suit after the defendant-insurer denies the plaintiff's claim, and that denial cannot possibly be based on an event that has not yet taken place. This does not mean that a defendant cannot rely on evidence of fraud obtained after litigation commences. It simply means that the evidence must relate to fraud that took place before the proceedings began.

In this case, the trial court granted summary disposition in favor of Farm Bureau based upon the fraud-exclusion clause in the no-fault policy at issue. In doing so, the trial court relied solely upon plaintiff's deposition testimony, which the trial court found to be false because the testimony contradicted the contents of surveillance videos showing plaintiff's post-accident conduct. The facts of this case fit squarely within *Haydaw*, and that decision requires a conclusion that the trial court erroneously granted summary disposition in favor of Farm Bureau.

Although the trial court did not rule on the issue, Farm Bureau also relied on plaintiff's submission of monthly statements for household services as grounds for invoking the fraud provision in its contract. Farm Bureau argued that plaintiff claimed entitlement to reimbursement for such services, while the surveillance video from January and April 2018 showed plaintiff performing those types of services for himself. We note that each of the surveillance videos was taken *after* plaintiff filed the complaint in this case.[3] Thus, as this Court described in *Haydaw*, the first-breach rule is implicated here. "That is, if the insurer, by the denial of the claim, was first to breach the contract, it may not defend on the grounds that the plaintiff subsequently failed to adhere

---

[3] Farm Bureau made no argument in the trial court that plaintiff's pre-litigation submission of statements for household services, between November 2016 and September 2017, was fraudulent.

to the contract." *Haydaw*, __ Mich App at __; slip op at 7. The first-breach rule only applies when the initial breach was substantial. *Id*. Plaintiff alleged in his complaint that Farm Bureau refused to provide PIP benefits despite the requirements of the no-fault policy of insurance. If Farm Bureau's initial denial was unjustified, it constituted a substantial breach that relieved plaintiff of his contractual duties under the no-fault policy. Therefore, "summary disposition on the basis of false statements would not be warranted unless and until it is determined that the denial of the claim did not breach the contract." *Id*.

Furthermore, we note that our Supreme Court's recent opinion in *Meemic* also has bearing on this case. As in *Meemic*, __ Mich at __; slip op at 10, this case presents "a contractual fraud defense to a claim for coverage mandated by the no-fault act." Here, three medical providers intervened as plaintiffs and sought payment for medical services rendered to plaintiff for injuries he sustained in the accident. As in *Meemic*, "[a]lthough the benefits are mandated by statute, [Farm Bureau] seeks to avoid its statutory obligations by enforcing the antifraud provision in the policy." *Id*. at __; slip op at 1. Similarly to the situation presented in *Meemic*, the insurer in this case does not assert a statutory defense to the payment of PIP benefits to the intervening-plaintiff medical providers, but asserts a contractual defense based on the language of its no-fault-insurance policy that it sold to plaintiff. And, as in *Meemic*, "the fraudulent activity at issue here did not relate to the inception of the contract" of insurance, and Farm Bureau "could not possibly have relied on" any of the fraudulent representations made by plaintiff in 2018 when it agreed to insure plaintiff "because, at the time, [he] had not yet made any of the alleged misrepresentations." *Id*. at __; slip op at 17-18. Under *Meemic*, therefore, Farm Bureau's attempt to void its contract of insurance with plaintiff based on the contract's anti-fraud provision must fail.

We vacate the trial court's order granting summary disposition in favor of Farm Bureau and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, having prevailed in full, may tax costs under MCR 7.219(F).

/s/Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Stephen L. Borrello